IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| CHERE LAVON NEWBERNE, | : | |
| Plaintiff, | : | |
| VS. | : | Civil Action File No. |
| | : | 7 : 09-CV-103 (HL) |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |

## RECOMMENDATION

The Plaintiff herein filed an application for disability insurance benefits on December 7, 2006, alleging disability beginning June 30, 2004. The date last insured was June 30, 2009. The application was denied initially and upon reconsideration, and the Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on March 18, 2008. In a decision dated July 24, 2008, the ALJ denied Plaintiff's claim. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making it the final decision of the Commissioner. The Plaintiff subsequently filed an appeal to this court. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted. This case is now ripe for review under section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3).

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by

substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. *Ambers v. Heckler*, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

The ALJ concluded that the Plaintiff had "severe" impairments of osteoarthritis, myalgia, and degenerative disc disease. However, the ALJ concluded that Plaintiff retained the residual functional capacity to perform unskilled or semi-skilled light work activity; with no complex tasks; with only occasional overhead reaching, stooping, balancing, crouching, kneeling, and crawling; with no work on ladders, ropes, or scaffolds; and no hazards. The ALJ then found that Plaintiff could perform her past relevant work.

The medical evidence shows that in October 1999, Plaintiff was hospitalized for nearly two weeks for "[d]isabling levels of anxiety and depression." Her insight was poor, her judgment was marginal, and she consistently returned to the topic of her anxiety with "impressionistic contents and catastrophizing." Her Global Assessment of Functioning (GAF) was assessed at 35, and she described a history of emotion and sexual abuse. (Tr. 193-94; 197-99; 205). During treatment it appeared that she was taking too much Ativan, and she underwent a detoxification protocol. She remained anxious and depressed, although her affect was brighter and she was less obsessive. IQ testing revealed a full scale IQ of 77, which Dr. Meacham thought "explain[ed] genesis of anxiety in terms of academic stress." He noted some schizoid and borderline characteristics (Tr. 195-96), and diagnosed benzodiazepine dependency, continuous, severe; anxiety disorder with panic and general features; depression, not otherwise specified; and mild cluster B traits. (Tr. 194-95).

In 2001 and 2002 Plaintiff complained of nervousness and problems sleeping. (Tr. 262-263). In 2003 she complained of "bad headaches, having bad thoughts," not sleeping, "very racing thoughts," and anxiety. (Tr. 257). In mid 2004 Plaintiff reported insomnia, frequent panic attacks, and severe headaches, which she described as stress headaches and which caused mild nausea a couple of times a month. By the fall, Klonopin and Effexor no longer helped during the day with her stress and anxiety (Tr. 288-92), and she reported obsessing, difficulty relaxing, and difficulty

3

sleeping despite taking Trazodone, Klonopin, and Ambien. She continued to have occipital headaches which lasted for days, an intermittent depressed mood, and malaise. (Tr. 286).

In December 2004 Plaintiff was hospitalized for five days with delusions secondary to childhood trauma. She had been using other people's medications. A GAF of 30 was assessed. She reported headaches, frequent nightmares, panic attacks, and flashbacks to childhood sexual abuse and racing thoughts, and was very confused, depressed, helpless, hopeless, very delusional, and religiously preoccupied. (Tr. 216-17; 222). During the course of her hospitalization her panic attacks decreased and her headaches got better. Her discharge diagnoses were major depressive disorder, recurrent, severe with psychosis (mild/without psychosis), panic disorder with agoraphobia, obsessive compulsive disorder by history, PTSD, and prescription substance abuse, with a GAF of 50. (Tr. 218-219).

In April and May 2005 Plaintiff received physical therapy for groin and left ankle pain. Her active ranges of motion for her right hip and left ankle were diminished with decreased function and gait deviations. Upon completion she had a significant decrease in pain (Tr. 319, 325-37), but she still complained of headaches three times a week that were worsened by stress. (Tr. 543-546). In June 2005 Plaintiff continued to obtain tranquilizers. Dr. Thanki, a psychiatrist, stated that her judgment and insight were poor, and her affect, inappropriate, with a GAF of 60. (Tr. 507).

The following month Plaintiff complained of headaches and insomnia. Dr. Smith gave her a limited number of Ambien and advised her to speak with her psychiatrist. (Tr. 282-83, 539-41). Dr. Thanki noted that she reported severe anxiety, episodes of racing mood, and an inability to sleep. She had delusional thoughts about God. Her speech was tangential and over productive at times, she exhibited some flight of ideas, and her concentration and attention were somewhat limited. Dr. Thanki diagnosed bipolar disorder, depressed mood, and benzodiazepine dependence. (Tr. 505).

In April 2006 Dr. Thanki noted that Plaintiff's mood, insight, and judgment were fair, her affect was slightly constricted, and her speech was slow. He noted that when stressed, she somaticized her stress by saying that she has aches, pain, and tension in her back and neck and that her psychiatric medications may not be working. He thought she may have borderline intellectual functioning given that she was in special education and tested poorly in math and English. (Tr. 499).

In May 2006 Plaintiff's therapy with Dr. Thanki was terminated. (Tr. 510). Her headaches improved. (Tr. 527-529). She was referred to Dr. Rasalam, who had seen her in 2002. He reported that her affect was constricted, and that her mood was tense, anxious, frustrated, angry, and depressed. Dr. Rasalam diagnosed major depression, recurrent, moderate and dependent compulsive traits, with a GAF of 50. (Tr. 235-37).

In August 2006 Dr. Sanderlin performed a diagnostic arthroscopy with a bursectomy and removal of loose bodies to relieve Plaintiff's moderate left shoulder pain and her moderately to severely limited range of motion. (Tr. 245-48).

In mid 2007 Plaintiff complained of frequent and intense headaches, although she was intact neurologically. (Tr. 519). Dr. Campagna noted that Plaintiff's recent myelogram showed degenerative disc disease and that her pain was mostly controlled by Oxycontin. (Tr. 561-62). In November Plaintiff was treated at the ER for lower back pain of ten days duration and swollen knees and hands. (Tr. 563-66).

On March 17, 2008, Dr. Rasalam prepared a report concerning Plaintiff's mental condition (Tr. 14-15, 497-98). Dr. Rasalam stated he had been treating Plaintiff for almost two years and diagnosed Plaintiff with major depression and dependent compulsive traits (Tr. 497). Dr. Rasalam recounted Plaintiff's subjective complaints and concluded Plaintiff will not be able to "hold down a

job." (Tr. 497-98).

The Vocational Expert (VE) testified that Plaintiff's past work was as a semi-skilled, sedentary medical office assistant (DOT# 205.362-018), an unskilled, light cashier (DOT# 311.462-010), a skilled, sedentary secretary (DOT# 201.362-010), and as a semi-skilled, sedentary switchboard operator (DOT# 235.662-022). (Tr. 46). The VE testified that an individual who was limited to light work with occasional reaching overhead, stooping, balancing, crouching, kneeling, or crawling, but no climbing or hazards, could perform all of Plaintiff's past work. (Tr. 47-48). If the individual could not perform complex or detailed work or multi-task, could not be faced with increasing demands on short notice, and would be limited to only incidental contact with the general public, she could still work as a cashier. (Tr. 48). If she were unable to work with money, she could still perform unskilled work as an information clerk, photocopy machine operator, and marking clerk. (Tr. 49-50).

*Residual Functional Capacity*

Plaintiff states that the ALJ erred in assessing her Residual Functional Capacity (RFC) by ignoring her mental impairments, and improperly rejected the opinion of her treating psychiatrist.

*Mental Impairments*

Plaintiff states that the ALJ erred in failing to find her mental impairments were "severe." The ALJ found in Plaintiff's favor at step two, and the specific impairments listed in his step two finding is irrelevant. As the Eleventh Circuit stated, "the ALJ could not have committed any error at step two because he found that [the claimant] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two." *Council v. Barnhart*, No. 04-13128, at 4 (11th Cir. Dec. 28, 2004) (Attached to Doc. 9). Because the ALJ found Plaintiff had severe impairments and proceeded to the next step of the

sequential evaluation process, the ALJ's step two finding was proper, even if he did not find that her mental impairments were "severe."

However, the ALJ was still required to consider the effects of all of her impairments, singly or in combination, at step four of the sequential evaluation, as stated above. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The ALJ found that the overall record supports the finding that the medically determinable mental impairments of anxiety, depression, panic disorder, post traumatic stress disorder, major depression or dependent compulsive traits considered singly or in combination , do not cause more than minimal limitation in the Plaintiff's ability to perform basic mental work activities and were therefore non-severe. (Tr. 15).

*Residual Functional Capacity/ Treating Psychiatrist*

The ALJ limited Plaintiff to unskilled to semi-skilled work but with no complex tasks. The ALJ cited the findings of the Agency's non-examining consultants as support for his credibility and Residual Functional Capacity findings. On March 5, 2007, a state psychological consultant concluded that Plaintiff's non-exertional mental impairments had resulted in no more than mild restrictions of daily living; mild difficulties in social functioning; mild difficulties in maintaining concentration, persistence, and pace; and one or two episodes of decompensation. On March 20, 2007, a state medical consultant found that Plaintiff could perform work at the medium exertional level with no overhead reaching and occasional climbing of ladders, ropes or scaffolds. Those findings were confirmed by subsequent consultants on September 10, 2007. Those findings were based only on the information contained in the record at the time of the opinions, and did not include additional medical evidence received after the date of the opinions. The ALJ found that the opinions did not include an assessment of hearing testimony or "other statements by the claimant (to the

extent to which they were consistent with the medical record)." (Tr. 18-19). The ALJ then found "that the claimant's impairments are somewhat more limited than was concluded by the state examiners." (Tr. 18-19).

As pointed out by Plaintiff, the non-examining Agency consultant found one or two episodes of decompensation (Tr. 18, 429); however, the ALJ specifically found there were none. (Tr. 15). The ALJ noted that Plaintiff had been hospitalized on two occasions for her mental impairments (Tr. 14), but did not further discuss whether or not these hospitalizations had any impact on her mental functioning.

The regulations at 20 C.F.R. § 416.927(d) provide specific criteria for evaluating medical opinions from acceptable medical sources: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. Additionally, the Eleventh Circuit has held that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" exists when the "(1) treating physician's opinion is not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Lewis*, 125 F.3d at 1440.

The ALJ discounted the opinion of Dr. Rasalam, giving it very limited weight. The ALJ found that the doctor did not supply any supporting clinical evidence or office or progress notes to support the extreme limitations he reported. (Tr. 15). Apparently counsel for Plaintiff at the time requested additional records from Dr. Rasalam regarding his years of treatment of Plaintiff for her mental impairments. (Tr. 23, 191). However, those documents were never included in the record before the ALJ or the Appeals Council.

8

While arguably the ALJ's decision to discount Dr. Rasalam's opinion of Plaintiff's mental limitations because there were no supporting records from his office was not error, the ALJ failed to assess the other medical evidence in the record that was before him regarding Plaintiff's mental impairments, including her two hospitalizations for mental health reasons. While citing the evidence earlier in his opinion (Tr. 14-15), the only opinions he assessed were those of Dr. Rasalam and, to a limited extent, the Agency's non-examining consultants. (Tr. 15, 18-19). He did not assess the records regarding her two hospitalizations or the opinions and records of her other treating mental health professionals, including Dr. Meacham and Dr. Thanki. Instead, the ALJ appeared to rely almost completely on the Agency non-examining consultants.

State agency psychological consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if their opinions are supported by the evidence in the record. See 20 C.F.R. § 404.1527(d), (f)(2); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986); SSR 96-6p.

While the ALJ is not required to refer to every piece of evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), the ALJ is required to adequately explain the ultimate decision to the extent that the reviewing court can determine whether the decision was rational and supported by substantial evidence. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981). The decision reached by the ALJ is not based upon substantial evidence, as it did not adequately evaluate the record regarding Plaintiff's mental impairments.

*Credibility*

Plaintiff states that the ALJ erred in assessing her credibility and subjective complaints. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), requires that an ALJ apply a three part "pain standard" when a claimant attempts to establish disability through his or her own testimony of pain

9

or other subjective symptoms.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain.

20 C.F.R. S 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability. *Foote v. Chater*, 67 F.3d 1553,1560-1561 (11th Cir. 1995).

A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Holt v. Sullivan*, supra at page 1223; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987). Where the claimant's testimony is critical, the fact finder must articulate specific reasons for questioning a claimant's credibility. "[D]isregard of such complaints without articulating the reason is inappropriate because it deprives the reviewing court of the ability to determine the validity of that action. When rejecting the credibility of a claimant's testimony, an ALJ must articulate the grounds for that decision." *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir.1986). The ALJ may consider the nature of a plaintiff's symptoms, the effectiveness of medication, a plaintiff's activities, and any conflicts between a plaintiff's statements and the rest of the evidence. See 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

The ALJ found that Plaintiff met the pain threshold in that her impairments could reasonably cause her pain, but did not find her statements concerning the severity of her symptoms and their limiting effects credible (Tr. 18). The ALJ specifically found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are credible only to the

10

extent they are consistent with the residual functional capacity assessment made herein by the undersigned." (Tr. 18). Other than summarizing Plaintiff's testimony, the ALJ does not specify what made her testimony consistent or inconsistent with his assessment of her residual functional capacity.

The decision "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to … subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p. *See also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (requiring the ALJ to articulate specific reasons for questioning a claimant's credibility).

Here, it is difficult to determine what portions of Plaintiff's testimony were rejected or accepted by the ALJ, and how it was either consistent or inconsistent with his findings regarding her Residual Functional Capacity. Consequently, the undersigned cannot conclude that the ALJ's decision to discount Plaintiff's subjective complaints was based upon substantial evidence.

*Conclusion*

Upon remand, the evidence regarding Plaintiff's mental impairments, including the medical evidence in the record as well as her testimony and other statements, should be re-evaluated. The undersigned makes no opinion as to whether or not Plaintiff is disabled, whether or not her testimony is credible, or whether or not the Residual Functional Capacity should change; instead, those conclusions are reserved for the Commissioner upon remand.

Inasmuch as the Commissioner's final decision in this matter is not supported by substantial evidence, it is RECOMMENDATION of the undersigned that the Commissioner's decision be **REVERSED AND REMANDED** pursuant to Sentence Four of § 405 (g) for further consideration in light of this opinion. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to

this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy.

**SO RECOMMENDED**, this 20th day of August, 2010.

S//Thomas Q. Langstaff<br>
THOMAS Q. LANGSTAFF<br>
UNITED STATES MAGISTRATE JUDGE

msd